1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KYLE AVERY,                                No. 2:12-cv-3083 KJN P

12                  Plaintiff,

13          v.                                   ORDER and

14   G. MORENO, et al.,                          FINDINGS AND RECOMMENDATIONS[1]

15                  Defendants.

16

17   I.  Introduction

18          Plaintiff is a state prisoner, incarcerated at the R.J. Donovan Correctional Facility (DCF),

19   who proceeds without counsel and in forma pauperis in this civil rights action filed pursuant to 42

20   U.S.C. § 1983.  This case proceeds on the original complaint (ECF No. 1), on plaintiff's First and

21   Eighth Amendment claims for relief, against defendants Moreno, Wachter, Dean, Plexico,

22   Tinseth, Barlesi, and Brebrick.  Presently pending is defendant's motion to dismiss this action

23   based on the following arguments:  (1) plaintiff failed to exhaust his administrative remedies

24   before commencing suit; (2) the complaint was filed beyond the statutory limitations period;

25   (3) plaintiff has failed to state a claim upon which relief can be granted;  and (4) plaintiff's claims

26   are barred by Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641

27   _____

28   [1] This action is referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B),
     Local General Order No. 262, and Local Rule 302(c).

                                               1

(1997).  Plaintiff filed an opposition (ECF No. 19), and defendants filed a reply (ECF No. 22).

For the reasons that follow, this court recommends that defendant's motion to dismiss be granted.

## II.  Background

This court made the following assessment of the complaint, upon initial screening pursuant to 28 U.S.C. § 1915A (see ECF No. 6 at 2-4):

> Plaintiff states potentially cognizable Eighth Amendment claims premised on allegations of excessive force, cruel and unusual punishment, and deliberate indifference to serious medical needs, against defendants Moreno, Wachter, Dean, Plexico, Tinseth, Barlesi, and Brebrick.  Specifically, plaintiff alleges that, in February 2006, he was repeatedly pepper sprayed pursuant to an incident involving planted contraband; thereafter required to strip and walk naked in front of other inmates and institutional employees, including female staff; left naked in a decontamination shower for more than six hours, and repeatedly showered with cold water by officers who kept pushing the re-start button; then denied medical care, particularly by the attending nurse, demonstrated by the failure to remove plaintiff from the shower, assess plaintiff's vital signs and provide plaintiff, an asthmatic, with an inhaler; and that, thereafter, plaintiff was provided only boxers (no towel) and escorted to a cold cell without bedding, toilet paper, hot water, etc., where he was required to stay for a period of three days, until released to suicide watch.
>
> Plaintiff further alleges that these acts were largely in retaliation against him for reporting and litigating previous alleged incidents of staff misconduct.   Thus, plaintiff states potentially cognizable retaliation claims for exercising his First Amendment rights, against the same defendants.
>
> Plaintiff alleges that, as a result of these incidents, he suffered physical and mental distress, including the exacerbation of his ongoing mental health problems, causing shame, depression and suicidal and homicidal ideations.  Plaintiff seeks, inter alia, $65,000 actual damages and, against each defendant, $5,000 punitive damages.
>
> This court previously dismissed this complaint, filed in a separate action, due to plaintiff's concession therein that he had not yet exhausted his administrative remedies.  (See Avery v. Moreno et al., Case No. 2:12-cv-0689 KJM KJN P.)  In the present case, plaintiff alleges that he has now exhausted his administrative remedies, although the [alleged] exhaustion appears to be premised on affirming the cancellation of plaintiff's administrative appeal because untimely initiated. (See Dkt. No. 2 herein ("Motion to File Late Complaint as a Result of Miranda Protections & Exhaustion Requirements").)   Plaintiff also alleges that he was delayed in commencing the administrative appeal process due to an underlying disciplinary proceeding which required that plaintiff retain his right to remain silent, hence precluding the disclosure of pertinent

1   matters in an administrative appeal. (See id.) The court is unable
2   to assess the significance of these matters at this time, but will
    address these matters if raised by the parties as this case proceeds.

3   Review of the instant briefing indicates that the official conduct challenged in this action

4   followed plaintiff's alleged shooting of darts at defendants. The incident, charged as an

5   "Attempted Battery On A Police Officer with a Weapon," was referred to the district attorney for

6   prosecution on March 2, 2006.

7   More than five years later, on September 30, 2011, plaintiff entered a plea agreement

8   conceding violation of California Penal Code sections 4501.5, and 4502(a), and received an

9   additional prison sentence of two years. (Dfs. Exh. J (ECF No. 16 at 30).)

10  On October 19, 2011, following the resolution of his criminal charges, plaintiff submitted

11  Appeal Log No. SAC-S-12-00443 (Dfs. Exh. I (ECF No. 15-14 at 6); Pltf. Exh. 1 (ECF No. 19 at

12  26)), in which he complained of the February 2006 matters alleged in this action.[2] Plaintiff

13  acknowledged in the appeal that his allegations were "old," but asserted that he had waited to

14  request administrative review until the conclusion of his related criminal proceedings because he

15  needed to exercise his right against self-incrimination, as established by Miranda v. Arizona, 384

16  U.S. 436 (1966).

17  Thereafter, on October 21, 2011, plaintiff was found guilty of the related disciplinary

18  charge and assessed 360 days loss of credit. (Dfs. Exh. J (ECF No. 16 at 6-7).)

19  On October 25, 2011, plaintiff's Appeal Log No. SAC-S-12-00443 was bypassed and

20  cancelled at the First Level Review, with the following explanation: "Your appeal has been

21  cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(4).[3]

22

23  [2] None of the other administrative appeals submitted by plaintiff during the relevant period
    challenged the conduct addressed by this action. (See Lozano Decl. (ECF No. 15-2); and Lynch
24  Decl. (ECF No. 15-3), and related exhibits.)

25  [3] 15 C.C.R. § 3084.6(c)(4) provides in pertinent part:

26          (c) An appeal may be cancelled for any of the following reasons,
            which include, but are not limited to: . . . (4) Time limits for
27          submitting the appeal are exceeded even though the inmate or
            parolee had the opportunity to submit within the prescribed time
28          constraints. . . .

1   Time limits for submitting the appeal are exceeded even though you had the opportunity to

2   submit within the prescribed time constraints." (Dfs. Exh. I (ECF No. 15-14 at 6); Pltf. Exh. 1

3   (ECF No. 19 at 26).)

4         On December 15, 2011, in a new appeal, Appeal Log No. SAC-S-11-01096, plaintiff

5   sought reconsideration of the cancellation of his Appeal Log No. SAC-S-12-00443.[4] (Dfs. Exh. I

6   (ECF No. 15-14 at 10); Pltf. Exh. 1 (ECF No. 19 at 38).) (Plaintiff stated that he had not received

7   notice of the October 25, 2011cancellation until December 13, 2011, because he had been "out to

8   court" (OTC).) First Level Review was bypassed. The request was "Accepted at the Second

9   Level of Review" on December 28, 2012, and "granted" on March 6, 2012, in a written decision

10   by Warden Tim Virga, granting plaintiff's request for reinstatement of Appeal Log No. SAC-S-

11   12-00443. Plaintiff was instructed to resubmit his original appeal and all supporting document-

12   tation, including any documents related to the underlying criminal charges.

13         However, on April 27, 2012, Warden Virga issued an Amended Second Level Review

14   Decision in Appeal Log No. SAC-S-11-01096, denying the appeal.[5] (ECF No. 19 at 33-4.) The

15   Amended Second Level decision states in pertinent part (id.):

16             The SLR conducted an inquiry into your concern on April 27, 2012,
              and reviewed both the original CDCR-602 concerning a
17             disciplinary issue dated October 19, 2011, as well as, CDCR-602
              dated December 15, 2011. On October 25, 2011, you were
18             provided with a CDC-695 Inmate/Parole Appeal Screening Form
              which described why the appeal in question was deemed to be
19             outside the allowable time constraints for filing an appeal. Upon
              further review, K.A. Daly interviewed you via telephone while
20             housed at R.J. Donovan Correctional Facility on April 27, 2012.
              K.A. Daly explained that Appeal dated October 19, 2011 (#SAC-S-
21             12-00443) was properly cancelled due to time constraints regardless
              of the attached District Attorney Referral Notice dated October 6,
22             2011. The core elements of the case stem from February 9, 2006,
              in which you described how you were denied bedding, a mattress,
23             soap, towels, toilet paper, or any personal cleaning supplies.
              Additionally, you stated that your food was thrown all together in a
24             plastic bag and served through a tray port for approximately three

25   ────────────
    [4] Plaintiff's second appeal bears a prefix of "11," while his first appeal bears a prefix of "12."
26   Both appeals were filed in 2011.

27   [5] Although the decision also states that the appeal was "granted" (ECF No. 19 at 34), review of
    the entire decision indicates that this sentence was likely misplaced "boiler," and that the appeal
28   was indeed denied.

                                    4

days until you went on suicide watch.  Your contention was that you were forced to endure harsh living conditions and suffered physical and emotional pain as a result of this treatment as described within the appeal form.

[¶]  CCR Section 3084.6(c)(4) is rather clear when it comes to time limits for submitting an appeal based on challenging a decision, action, condition, policy or regulation that has a material adverse effect upon the welfare of a person.  As such, your request to have the original appeal dated October 19, 2011 reinstated is Denied.  At this juncture, #SAC-S-12-00443 will remain as a cancelled appeal as previously described within CDC-695 dated October 25, 2011.

. . . All submitted documentation and supporting arguments have been considered, and you have failed to raise any significant new issues or compelling information in appealing this matter to the Second Level of Review.  After close review of this matter, I find that staff acted appropriately and in accordance with State law, CCR, and the DOM.

Appeal Response: For the reasons cited above, your appeal is DENIED.

Also on April 27, 2012, plaintiff received a First Level Review decision by the CSP-SAC Appeals Coordinator, informing plaintiff that his Appeal Log No. SAC-S-12-00443 was again cancelled pursuant to 15 C.C.R. § 3084.6(c)(4), because untimely submitted.  (Pltf. Exh. 1 (ECF No. 19 at 25.)  The decision also noted that an "amended SLR [Second Level Review] was conducted for #SAC-S-11-01096.  As such, this appeal will remain cancelled for the reasons contained within #SAC-S-11-01096."  (Id.)

A Third Level decision in Appeal Log No. SAC-S-11-01096 was rendered on July 17, 2012, in which the CDCR Office of Appeal Chief J.D. Lozano repeated the following grounds (ECF No. 19 at 35):

Your appeal has been cancelled pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(4).  Time limits for submitting the appeal are exceeded even though you had the opportunity to submit within the prescribed time constraints.

Plaintiff filed the instant action on December 26, 2012.  Plaintiff filed a prior identical action, in Case No. 2:12-CV-0689 KJM KJN P, on March 19, 2012, which was dismissed based on plaintiff's concession therein that he had then not exhausted his administrative remedies.  (Case No. 2:12-CV-0689 KJM KJN P (ECF Nos. 7, 12).)

5

1   III.  Discussion

2        A.  Exhaustion of Administrative Remedies

3        Plaintiff contends, inter alia, that the Third Level cancellation of his relevant

4   administrative grievance satisfies the requirement that his administrative remedies be exhausted

5   before bringing suit, because no further administrative remedies were available.  Defendants

6   respond that cancellation of an untimely-submitted appeal fails to satisfy the exhaustion

7   requirement, citing the Supreme Court's decision in Woodford v. Ngo, 548 U.S. 81 (2006).

8        1.  Legal Standards

9        In the Ninth Circuit, a motion to dismiss for failure to exhaust administrative remedies is

10  brought pursuant to an "unenumerated Rule 12(b)" motion, Federal Rules of Civil Procedure.

11  See Albino v. Baca, 697 F.3d 1023, 1029 (9th Cir. 2012).  Review of an exhaustion motion

12  requires the court to look beyond the pleadings in "a procedure closely analogous to summary

13  judgment."  Wyatt v. Terhune, 315 F.3d 1108, 1119 n.14 (9th Cir. 2003).  "In deciding a motion

14  to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings

15  and decide disputed issues of fact."[6]  Id. at 1119.

16       The Prison Litigation Reform Act (PLRA) provides that, "[n]o action shall be brought

17  with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

18  prisoner confined in any jail, prison, or other correctional facility until such administrative

19  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA requires that

20  available administrative remedies be exhausted prior to filing suit.  See McKinney v. Carey, 311

21  F.3d 1198 (9th Cir. 2002).  Pursuant to this rule, prisoners must exhaust their administrative

22  remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even

23  though the latter is unavailable pursuant to the administrative grievance process.  Booth v.

24  Churner, 532 U.S. 731, 741 (2001).

25       The exhaustion requirement is not jurisdictional, but an affirmative defense that may be

26  raised by a defendant in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).

27  _____

28  [6]  Plaintiff herein was timely informed of the requirements for opposing a motion to dismiss on exhaustion grounds.  (See ECF No. 15 at 1-3.)

1   See Jones v. Bock, 549 U.S. 199, 216 (2007) ("inmates are not required to specially plead or

2   demonstrate exhaustion in their complaints"); Wyatt, 315 F.3d at 1117-19 (failure to exhaust is an

3   affirmative defense). Defendants bear the burden of raising and proving the absence of

4   exhaustion, and their failure to do so waives the defense. Id. at 1119.

5           Exhaustion requires that the prisoner complete the administrative review process in

6   accordance with all applicable procedural rules, including deadlines for submitting administrative

7   grievances. Woodford, supra, 548 U.S. 81; accord, Woods v. Carey, 684 F.3d 934, 936 n.3 (9th

8   Cir. 2012) ("the Supreme Court in Woodford v. Ngo, 548 U.S. 81 (2006) . . . held that the

9   exhaustion requirement under the Prison Litigation Reform Act is not satisfied if a grievance is

10  denied as untimely").

11          However, "a prisoner need not press on to exhaust further levels of review once he has

12  received all 'available' remedies at an intermediate level of review or has been reliably informed

13  by an administrator that no remedies are available." Brown v. Yaloff, 422 F.3d 926, 935 (9th Cir.

14  2005); accord, Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) (plaintiff's failure to timely

15  exhaust his administrative remedies was excused because he took reasonable and appropriate

16  steps to exhaust his claim but was precluded from doing so by the mistake of a prison official);

17  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010) (improper screening of a grievance renders

18  administrative remedies effectively unavailable, e.g., if "prison officials screen out an inmate's

19  appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and

20  administrative remedies are therefore plainly unavailable").

21          When the district court concludes that a prisoner has not exhausted available

22  administrative remedies on a given claim, "the proper remedy is dismissal of the claim without

23  prejudice." Wyatt, 315 F.3d at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir.

24  2005) ("mixed" complaints may proceed on exhausted claims). Thus, "if a complaint contains

25  both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S.

26  at 221.

27          In Woodford, the Supreme Court held that "the PLRA exhaustion requirement requires

28  proper exhaustion." Woodford, 548 U.S. at 93 (emphasis added); id. at 84. The Court noted that

7

1   "proper exhaustion of administrative remedies . . .  means using all steps that the agency holds

2   out, and doing so properly (so that the agency addresses the issues on the merits)."  Id. at 90

3   (citation and internal quotation marks omitted).  The Court further noted that "[p]roper exhaustion

4   demands compliance with an agency's deadlines and other critical procedural rules because no

5   adjudicative system can function effectively without imposing some orderly structure on the

6   course of its proceedings."  Id. at 90-91.  The Court observed that, in the prisoner context, the

7   exhaustion requirement "gives prisoners an effective incentive to make full use of the prison

8   grievance process and accordingly provides prisons with a fair opportunity to correct their own

9   errors.  This is particularly important in relation to state corrections systems because it is difficult

10  to imagine an activity in which a State has a stronger interest, or one that is more intricately

11  bound up with state laws, regulations, and procedures, than the administration of its prisons."  Id.

12  at 94 (citation and internal quotation marks omitted).

13      In Woodford, the prisoner filed his grievance approximately six months after the

14  challenged disciplinary action, thus clearly missing the 15-day deadline for making such

15  challenge.  The grievance was rejected as untimely, with a citation to, inter alia, 15 C.C.R. §

16  3084.3(c)(6).  The district court dismissed the action for failure to exhaust administrative

17  remedies.  The Ninth Circuit Court of Appeals reversed, finding that the exhaustion requirement

18  had been met because no further administrative remedies were available to the prisoner.  See Ngo

19  v. Woodford, 403 F. 3d 620, 631 (9th Cir. 2005) (prisoner's "administrative appeal was deemed

20  time-barred and no further level of appeal remained in the state prison's internal appeals

21  process").  The Supreme Court reversed, concluding that an administrative appeal could be

22  "exhausted" only if the prisoner complied with "proper procedures," thereby furthering the

23  purposes of exhaustion.  The Court reasoned:

24          Proper exhaustion reduces the quantity of prisoner suits because
            some prisoners are successful in the administrative process, and
25          others are persuaded by the proceedings not to file an action in
            federal court.  Finally, proper exhaustion improves the quality of
26          those prisoner suits that are eventually filed because proper
            exhaustion often results in the creation of an administrative record
27          that is helpful to the court.  When a grievance is filed shortly after
            the event giving rise to the grievance, witnesses can be identified
28          and questioned while memories are still fresh, and evidence can be

8

1    gathered and preserved.

2    Woodford, supra, 548 U.S. at 94-95 (fn. omitted).  The Court held that the PLRA requirement of

3    "proper exhaustion" was not met if a grievance was dismissed because the prisoner missed

4    deadlines set by the institution's grievance policy.  Id. at 93-95.

5        On remand, the Ninth Circuit Court of Appeals affirmed the district court's dismissal of

6    the action for failure to exhaust administrative remedies.  The Ninth Circuit found that plaintiff

7    had met none of the potentially applicable exceptions to the PLRA's exhaustion requirement, e.g.,

8    "that administrative procedures were unavailable, that prison officials obstructed [the prisoner's]

9    attempt to exhaust or that he was prevented from exhausting because procedures for processing

10   grievances weren't followed."  Ngo v. Woodford, 539 F.3d 1108, 1110 (9th Cir. 2008).

11       2.  Analysis

12       In the present case, plaintiff makes two related arguments.  First, plaintiff contends that

13   the initial submission of his appeal, on October 19, 2011, was timely.  Although the appeal

14   challenged matters that had taken place in February 2006, plaintiff asserts that the deadline for

15   submitting the appeal was stayed until the conclusion of his criminal proceedings, citing 15

16   C.C.R. §§ 3316(c)(1), (3), and 3084.9(g)(1), and Miranda, supra, 384 U.S. 436.  Second, plaintiff

17   contends that the cancellation of his appeal, at the Third Level, satisfies the exhaustion

18   requirement because no further administrative remedies were available.

19       Plaintiff is technically correct that the Third Level affirmance of the cancellation of his

20   appeal "exhausted" his available administrative remedies.  That is, plaintiff exhausted his

21   administrative remedies challenging the cancellation of his appeal because untimely.  However,

22   plaintiff's argument that he timely submitted the appeal is without merit.  For the reasons that

23   follow, the court finds that plaintiff did not "properly exhaust" his administrative remedies on any

24   of the substantive claims asserted in this action.

25       Plaintiff relies on the following regulations.  Section § 3084.9(g)(1) provides that "[a]

26   disciplinary action cannot be appealed until the hearing process is completed, including any re-

27   hearing."  15 C.C.R. § 3084.9(g)(1); see also id., § 3084.9(g)((2) (such appeals must be taken

28   "through the third level of review").  Section 3316(c) provides that "[r]eferral of an inmate's

9

1   misconduct for prosecution shall not stay the time limits for a disciplinary hearing unless the

2   inmate submits a written request . . . requesting postponement of the hearing pending the outcome

3   of the referral." 15 C.C.R. § 3316(c).  If the inmate makes such request, then the "postponed

4   disciplinary hearing shall be held within 30 days after . . . [w]ritten notice is received that the

5   criminal proceedings are terminated without an acquittal." 15 C.C.R. § 3316(c)(1)(D).

6   Thereafter, "[s]hould the court accept a plea agreement or negotiated settlement resulting in a

7   conviction for a lesser offense than was originally charged . . . the Department shall not be

8   precluded from taking appropriate administrative action based on the facts contained in the

9   original charge." 15 C.C.R. § 3316(c)(3).

10       These provisions authorize stays of:  (1) a disciplinary proceeding based on conduct that

11   was also referred for criminal prosecution, until the conclusion of the criminal proceedings; and

12   (2) an administrative appeal challenging the resulting disciplinary action.  However, these

13   provisions do not authorize the stay of an administrative appeal asserting official misconduct

14   during the incident that also resulted in the prisoner's criminal and disciplinary referrals.

15       A similar distinction was noted in Rollings-Pleasant v. Deuel Vocational Ins., et al., 2007

16   WL 2177832 (E.D. Cal. 2007).  In that case, the court applied the Supreme Court's then-recent

17   holding in Woodford, supra, 548 U.S. 81, to find that plaintiff had failed to "properly exhaust" his

18   administrative remedies challenging official conduct that allegedly occurred during the same

19   events that resulted in a disciplinary proceeding against plaintiff.  First, the court found that

20   plaintiff's failure to cooperate with the investigation into his allegations justified the cancellation

21   of the appeal; and therefore, because plaintiff failed to properly utilize the prison grievance

22   procedure, he failed to satisfy the exhaustion requirement.  Rollings-Pleasant, 2007 WL 2177832

23   at *5-6.  Next, the court rejected plaintiff's assertion that "he did not have to resume his appeal

24   until after the disciplinary proceedings were complete." Id. at *6.  The court reasoned that, while

25   these matters involved the same events, "the problems [plaintiff] complained of were not related

26   to the results of the prison disciplinary hearing." Id.

27       Similarly, in the instant case, plaintiff's administrative appeal did not challenge his

28   disciplinary charges or proceedings, but challenged defendants' treatment of plaintiff following

10

1    his allegedly precipitating conduct of shooting darts at defendants.  These matters are temporally

2    and substantively distinct.  The regulations cited by plaintiff, which stayed the resolution of his

3    disciplinary proceedings until the conclusion of his related criminal proceedings, cannot

4    reasonably be construed to stay the time for challenging allegedly contemporaneous official

5    misconduct.  Were it otherwise, the purposes of administrative exhaustion would not be met.  See

6    Woodford, 548 U.S at 89 ("[E]xhaustion promotes efficiency. . . . Claims generally can be

7    resolved much more quickly and economically in proceedings before an agency than in litigation

8    in federal court.") (Citations omitted.)

9           Plaintiff contends, alternatively, that the deadline for submitting his appeal was stayed

10   until the conclusion of his criminal proceedings, because plaintiff had the right to refrain from

11   incriminating himself, as secured by Miranda, supra, 384 U.S. 436.  Plaintiff argues that he "was

12   not obligated to explain the details of factors connected to the case that could be turned against

13   him in appeal grievance or otherwise at counsel's advice. . . . Plaintiff didn't have any obligation

14   to do the equivalent of running his mouth instead in writing on a grievance form when under

15   Miranda protections."  (Oppo. (ECF No. 19 at 16-7).)

16          In Miranda, the Supreme Court held that "the prosecution may not use statements,

17   whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant

18   unless it demonstrates the use of procedural safeguards effective to secure the [Fifth Amendment]

19   privilege against self-incrimination."  Miranda, 384 U.S. at 444.  The privilege may be asserted

20   "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory."

21   Kastigar v. United States, 406 U.S. 441, 444 (1972) (citations and fns. omitted).  "The protection

22   does not merely encompass evidence which may lead to criminal conviction, but includes

23   information which would furnish a link in the chain of evidence that could lead to prosecution, as

24   well as evidence which an individual reasonably believes could be used against him in a criminal

25   prosecution."  Maness v. Meyers, 419 U.S. 449, 461 (1975) (citation omitted).

26          Plaintiff has cited no authority, and the court has found none, to support his contention

27   that, due to the pendency of his criminal proceedings, plaintiff's Miranda rights would necessarily

28   have been compromised by timely filing his administrative appeal, or that plaintiff's assertion of

1   these rights automatically stayed the deadline for submitting the appeal.  See 15 C.C.R. §

2   3084.6(b)(1) ("inmate . . . must submit the appeal within 30 calendar days of . . . [t]he occurrence

3   of the event or decision being appealed").

4        The court in Brewer v. Corrections Corporation of America, 2010 WL 398979 (E.D. Ky.

5   2010), rejected a similar argument.  In Brewer, the plaintiff sought to pursue a federal action

6   without initiating or completing the administrative grievance process.  The plaintiff, an inmate

7   charged in a disciplinary proceeding with having an intimate relationship with a correctional

8   officer, sought to pursue a federal civil rights claim based on her alleged rape by the officer.

9   Plaintiff asserted that the PLRA's exhaustion requirement was unconstitutional as applied to her,

10  because her Miranda rights associated with the disciplinary proceeding precluded compelling her

11  to discuss the alleged rape in an administrative grievance.  Plaintiff argued that the exhaustion

12  requirement "puts her in the unenviable position of having to decide whether to incriminate

13  herself or give up her right to sue." Brewer, 2010 WL 398979 at *4 (fn. omitted).  The district

14  court rejected this argument, reasoning that "the Court fails to see how requiring [plaintiff] to file

15  a grievance while under investigation for inappropriate sexual behavior with another person

16  violates her rights to remain silent and to be free from incriminating herself.  The Miranda

17  decision does not apply to the filing of a grievance because Brewer was not subject to the

18  coercion of custodial interrogation while filling out the grievance form.  Had she filed the

19  grievance, she would have merely presented her version of the events for review throughout the

20  prison's administrative process." Id. (fn. omitted).

21       This reasoning is even more persuasive in the instant case.  While Brewer involved

22  potentially contradictory factual allegations concerning the same event(s), in the instant case the

23  disciplinary and criminal charges against plaintiff were premised on his alleged dart throwing,

24  while plaintiff's appeal focused on defendants' allegedly unconstitutional conduct thereafter.

25  Like the plaintiff in Brewer, plaintiff herein needed, in a timely-submitted appeal, only to allege

26  his version of defendants' alleged First and Eighth Amendment violations, without incriminating

27  himself.  (This is exactly what plaintiff did more than five years later, when he submitted the

28  underlying administrative grievance.)  Then, during the administrative review process, if plaintiff

12

1    was questioned about the charges against him, he could have asserted his right to remain silent.

2    Nevertheless, plaintiff concedes that he ultimately "plead a deal in criminal court," and "did

3    admit a guilt in his RVR." (Oppo. (ECF No. 19 at 3).)  For these reasons, the court finds no

4    authority for plaintiff's contention that the exercise of his <u>Miranda</u> rights, until the conclusion of

5    his criminal proceedings, suspended the deadline for submitting his administrative grievance.

6         Finally, the court finds that none of plaintiff's numerous related arguments[7] demonstrate

7    any recognized exception to the PLRA exhaustion requirement, e.g., that administrative

8    procedures were entirely unavailable, or that prison officials improperly obstructed his attempt to

9    exhaust.  <u>See</u> <u>Ngo v. Woodford</u>, <u>supra</u>, 539 F.3d at 1110.

10        Accordingly, the undersigned finds that plaintiff's administrative appeal was appropriately

11   cancelled as untimely submitted.  As a result, even though plaintiff appealed this cancellation

12   through the Third Level, plaintiff did not properly exhaust his administrative remedies on any of

13   the substantive claims asserted herein, thus requiring dismissal of this action.  <u>Woodford</u>, 548

14   U.S. at 93-5.

15        B.  <u>Statute of Limitations</u>

16        While the court need not reach defendants' additional arguments in support of their

17   motion to dismiss, it addresses defendants' contention that plaintiff filed the complaint in this

18   action beyond the four-year limitations period.  Plaintiff concedes this point, but contends, for the

19   reasons rejected above, that he was entitled to delay commencing this action because entitled to

20   delay commencing the administrative appeal process.

21   ////

22

23   [7] Plaintiff also argues, for example, that "the filing of the grievance years after the time limit as a
     result of stayed RVR Hearing pending criminal adjudication stayed the time limits for filing a
24   grievance on any issue linked to the RVR since the RVR was stayed." (Oppo. (ECF No. 19 at
     7).)  "The grievance never should have been cancelled because Regulations permit for an appeal
25   over a disciplinary issue to be stayed until conclusion of the stayed disciplinary hearing and
     issuance of its Final copy [decision]."  (<u>Id.</u>)  "[T]he fact that plaintiff had already prevailed on the
26   issue of cancellation invalidates the Director's cancellation . . . ."  (<u>Id.</u>)  Warden Virga's decision
     addressing [merits of] the previously cancelled appeal "exhausted the appeal."  (<u>Id.</u>; <u>see</u> <u>also</u> <u>id.</u> at
27   11 ("Warden Tim Virga reviewed the cancellation and agreed to its tenuous cancellation being
     erroneous (sic) and remanded it for review!")).)
28
                                        13

1    Section 1983 contains no statute of limitations.  Therefore, federal courts apply the state's

2    personal injury statute of limitations, subject to any state tolling provisions that are not

3    inconsistent with federal law.  Azer v. Connell, 306 F.3d 930, 935-36 (9th Cir. 2002).  The

4    California statute of limitations for personal injury actions is two years.  Cal. Code Civ. Proc. §

5    335.1; Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).  The new two-year statute of

6    limitations does not apply retroactively, thus requiring application of the one-year limitations

7    period to actions that accrued before January 1, 2003.  Id.  In addition, in California the statute of

8    limitations for prisoners serving less than a life sentence is tolled for two years.  Cal. Civ. Proc.

9    Code § 352.1(a); Johnson v. State of California, 207 F.3d 650, 654 (9th Cir. 2000).  Accordingly,

10   the effective statute of limitations for prisoners whose claims accrued after January 1, 2003, is

11   four years (two year limitations period plus two years statutory tolling).  The accrual date of a

12   civil rights claim is determined by federal law.  Azer, 306 F.3d 936.  "Under federal law, a claim

13   accrues when the plaintiff knows or has reason to know of the injury which is the basis of the

14   action."  TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

15   Liberally construing the dates of defendants' challenged conduct, from February 2, 2006,

16   through February 6, 2006 (see ECF No. 1 at 9, 15, and 23-32 (Exh. 9)), application of the four-

17   year statute of limitations, absent any tolling, required that plaintiff initiate this suit within four

18   years after February 6, 2006, or by February 6, 2010.  Although a prisoner is entitled to equitable

19   tolling for the period of time during which he properly exhausts his administrative remedies,

20   Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005), plaintiff is not entitled to tolling on this

21   basis because he did not properly exhaust his administrative remedies.  Moreover, plaintiff did

22   not even commence the administrative process until October 19, 2011, more than a year after

23   expiration of the statute of limitations.  The instant action, commenced December 26, 2012, was

24   filed nearly three years after expiration of the statute of limitations, while plaintiff's prior

25   identical complaint, in Case No. 2:12-CV-0689 KJM KJN P, was filed more than two years past

26   the statute of limitations.

27   Plaintiff's failure to commence this action within the statute of limitations provides an

28   independent basis for dismissing this case.

1   IV.  Conclusion

2          For the foregoing reasons, IT IS HEREBY ORDERED that:

3          1.  The Clerk of Court is directed to randomly assign a district judge to this action.

4          Further, IT IS HEREBY RECOMMENDED that:

5          1.  Defendants' motion to dismiss (ECF No. 15), be granted; and

6          2.  This action be dismissed.

7          These findings and recommendations are submitted to the United States District Judge

8   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

9   after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

12  objections shall be filed and served within fourteen days after service of the objections.  The

13  parties are advised that failure to file objections within the specified time may waive the right to

14  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15  Dated:  January 31, 2014

16

17  aver3083.mtd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

15